## *In re* BAXTER, Bankrupt.

*(District Court, S. D. New York.* April 8, 1882.)

1. BANKRUPTCY—PROOFS OF DEBTS—AMENDED PROOFS.

Proofs of debt, made under a mistake of fact or law, may be amended or withdrawn, if no action has been based upon such proofs which cannot be recalled or compensated.

2. SAME—MISTAKES—WITHDRAWAL OF PROOFS—INDEMNITY.

Where proofs of debt were made by B. B. & Co. upon two bills of exchange, drawn upon London, against consignments of merchandise, unaccompanied by a transfer of the bill of lading, and the branch house of B. B. & Co., in London, at the time of such proof, claimed a lien upon the proceeds of the merchandise there as security for the bills, which was disputed and in litigation between various claimants upon the fund, including the trustee of the bankrupt's estate, and the facts were known to the creditor here, who verified the proofs of debt, and supposed that the facts were also known to his attorney here, to whom the preparation of the proofs was entrusted, but who was ignorant thereof and accordingly prepared the proofs as unsecured claims, *held*, that the case was one of mistake of mixed fact and law, and the creditors had leave to withdraw their proofs upon terms of indemnity to the estate. *Held*, *also*, that the mere receipt of dividends upon such proofs is no obstacle to the withdrawal or amendment of the proofs, as the dividends may be returned, with interest.

3. SAME—WITHDRAWAL OF PROOFS, WHEN ALLOWED—RETURN OF DIVIDEND.

But where the trustee of a bankrupt was defending in England against a claim made by creditors upon a certain fund as security for their demands, upon the ground that they were estopped by having proved their claims here as unsecured, and also defended upon the merits, denying the creditors' alleged lien upon the fund, *held*, that the creditors' withdrawal of proofs should be allowed only upon the return of dividends, with interest, the payment of the costs of this application, and of all the costs and counsel fees in the litigation in England, if the trustee elected to abandon the further defence of the case there, or, if not, then upon payment of the trustee's costs up to this time.

Petition for Leave to Withdraw Proofs.

*W. W. McFarland,* for petitioners.

*Abbott Brothers,* for trustee.

BROWN, D. J. This is a petition by Brown Bros. & Co. for leave to withdraw their proofs of debt heretofore made upon two bills of exchange drawn by Archibald Baxter & Co. upon Jones Bros., of London, at 60 days' sight,—the one dated August 5, 1875, for £2,500, payable to the order of Brown, Shipley & Co.; the other dated August 6, 1875, for £1,000, payable to the same payees,—which were drawn against the "account of cheese per Britannic, and lard per Greece;" which bills had been purchased by the petitioners on the day of their date. On the seventh day of August, 1875, Baxter & Co. failed, and made an assignment of their property in trust for their creditors.

In November following a petition in bankruptcy was filed against them in this court, on which an adjudication in bankruptcy was had on December 24, 1875. On the twenty-eighth day of March, 1876, a trustee was appointed by the creditors for closing up the bankrupts' estate. On August 3, 1877, the petitioners filed proofs of debt against the bankrupts upon six bills of exchange, as unsecured demands amounting altogether to the sum of $56,239.87, including the two bills first above mentioned. On the third day of November, 1877, they received a dividend of 5 per cent., and on the tenth of February, 1879, a further dividend of 3 per cent., on the amount proved. They now ask leave to withdraw their proofs in respect to the two bills above mentioned, upon restoring the dividends received thereon, with interest, upon the ground stated in their petition. This is opposed by the trustee in behalf of the creditors. The two bills in question had been purchased by the petitioners upon the faith of the security of cheese and lard forwarded, or to be forwarded, by Baxter & Co. to Jones Bros. by the steamers Britannic and Greece, as referred to in the bills. The bills of lading were not attached to the drafts; and such had previously been their usual course of dealing. Immediately upon the failure of Baxter & Co. the petitioners employed their attorney to examine into the law and the facts in regard to the situation of their claims and their security under the bills, and were advised that where the goods referred to in the bills of exchange had been actually forwarded, the bills would constitute a lien upon the goods or their proceeds.

The result of the examination into the facts by their attorney at that time led to the belief on his part that while certain goods represented by other bills of exchange had been forwarded, the goods represented by the two bills in question had not been forwarded. This was in fact a mistake, which the petitioners, through the English branch of their house, Brown, Shipley & Co., afterwards learned in due course of mail; but their attorney here was not apprised of his mistake nor was his misapprehension corrected. In 1877, accordingly, when the same attorney prepared the proofs of debt, these two bills were included with the others, and all were thus proved as unsecured, upon the supposition and belief on his part that the goods had not gone forward, and that there was no claim to security upon them; while certain other bills, upon which the attorney understood that the goods had been forwarded, were not included among the claims then proved. The petitioners, on the other hand, supposed that their attorney had been apprised of the fact that all the goods had been forwarded

to the drawee, and that the proofs were drawn in accordance with, and saving to them, all their legal rights. The error was not discovered until a few months since, when, in a suit in the High Court of justice, Chancery Division, in England, by Brown, Shipley & Co., plaintiffs, against the drawee and the trustee of the bankrupts, whereby the plaintiffs sought to assert their lien upon the proceeds of the goods, the trustee interposed as one of his defences the proofs of the drafts in this court as unsecured claims as a waiver or forfeiture of any lien upon the goods. The delay in the commencement of this last suit had been caused through previous litigation in England in the same court, wherein Dennistown, Wood & Co. had, shortly after the arrival of the goods in England in 1875, asserted a claim upon the goods or their proceeds in their favor. The trustee, as well as Brown, Shipley & Co., were defendants in that suit. The latter, in their answer, had asserted their priority of lien, but without claiming specific relief in that suit. Final decree against Dennistown, Wood & Co.'s claim was not rendered until July, 1881; whereupon, within a few days thereafter, the suit first mentioned was commenced by Brown, Shipley & Co. The trustee in this last suit defends, not merely upon the ground that the petitioners are precluded from recovery in consequence of their proof of the drafts in 1877 as unsecured debts, but also upon the merits, contending that upon the facts the petitioners are not entitled to either a legal or an equitable lien.

Without specifying further the details of the matters referred to in the present petition, and in the answering affidavits on the part of the trustee, I am satisfied that the proof of debt made by the petitioners in 1877, so far as it embraces the two bills of exchange above mentioned, was the result of a mutual misunderstanding between the petitioners and their attorney; that, on the part of the latter, to whom the preparation of the proofs had been entrusted, it was purely a mistake of fact, and that although the proofs were submitted to and verified by one of the petitioners who did know the facts in regard to the forwarding of the goods, yet that he was mistaken also in supposing that his attorney had knowledge of the facts, and that the proofs were properly drawn in reference to those facts, so as to save to them their legal rights then in litigation in England. The security claimed by way of the alleged lien is of a peculiar character, and, as the trustee even now contends, altogether novel and without any legal foundation. But that neither the petitioners nor their attorney ever contemplated waiving their claim, or doing

any act to prejudice it, is, I think, clearly substantiated, not merely by the claims of the petitioners in the litigation in England, which has been all the time going on, but especially, also, from the fact that two other bills of exchange for about the same amounts, as to which the attorney knew the goods had been forwarded, were omitted from the proofs, and have never been presented in bankruptcy at all, although the claim to a lien on the goods as to those bills was attended by additional litigation here, growing out of the assertion of title to the goods by the original vendors of Baxter & Co. The proofs, therefore, must be regarded as being made under a pure mistake of fact on the part of the attorney who prepared them, and mistake of mixed law and fact on the part of the petitioners. In such cases it has been the practice in courts of bankruptcy in this country to permit the error to be corrected when the estate has not been injuriously affected, or when any action based thereupon can be recalled or compensated.

In the case of *Clark & Bininger*, in this court, (5 N. B. R. 255,) proofs were allowed to be amended under circumstances somewhat similar.

In the case of *Edward Hubbard, Jr.*, 1 Low. 190, (1 N. B. R. 679,) *Lowell* J., says:

" When proof has been made under a mistake of fact, or even of law, it may be corrected, almost as a matter of course, if neither the bankrupt nor other creditors who have proved will be injured. And even where the rights of others will be affected, if the only effect is to restore all parties to the position they were in before the debt was proved, it would be proper to allow the withdrawal if there had been a mistake and no want of diligence."

In the case of *John F. Parkes*, 10 N. B. R. 82, *Longyear*, J., says:

" The court undoubtedly possesses the power, in its discretion, to allow proofs of debt to be amended, and in cases of mistake or ignorance, whether of fact or of law, will generally exercise that power in the absence of fraud, and when all parties can be placed in the same situation they would have been in if the error had not occurred, and where justice seems to demand that it should be done." *In re Brand*, 3 N. B. R. 324; *In re Jaycox*, 8 N. B. R. 277; *Ex parte Harwood*, Crabbe, 496; *Edwards* v. *Morgan*, McClel. 551.

But where a creditor, by proof of his debt, has taken part in the meetings of creditors, and controlled the action of others in the choice of an assignee or trustee, or influenced the question of the bankrupt's discharge, he is held precluded from any subsequent change in his proofs. *New Bedford, etc.*, v. *Fair Haven, etc.*, 9 Allen, 175, 180; *Ex parte Solomon*, 1 Glyn & J. 25; *Stewart* v. *Isidor*, 1 N, B. R. 485; *In re Bloss*, 4 N. B. R. 147.

Where in other respects a creditor would be held entitled to amend his proofs, the mere prior receipt of dividends is no objection, as they can be restored to the assignee or trustee. Such was the case in the case of *In re Parkes,* above cited; and in England, in cases of double bankruptcy, or proof against joint and several estates, amendments are frequently allowed on terms of repayment of dividends already received. *Ex parte Cobbett,* 1 Atk. 218; *Ex parte Bolton,* 2 Rose, 389; *Ex parte Bielby,* 13 Ves. 70; *Ex parte Waring,* 19 Ves. 345; (see the decree in that case quoted in full in *Powles* v. *Hargreaves,* 3 De Gex, Mac. & G. 445;) *In re Barnard's Banking Co.* L. R. 10 Ch. App. 198, 201; 5 H. L. 157; *City Bank* v. *Luckie,* L. R. 5 Ch. App. 773, 778; *Ex parte Morris,* 16 N. B. R. 572.

It is urged on the part of the trustee that, during the pendency of the prior litigation in England in the suit of Dennistown, Wood & Co., certain overtures by them were made towards a settlement, and pecuniary offers made to the trustee in case he would withdraw his defence, by which he might have realized something for the estate. but which were rejected by him on the faith of the supposed waiver of their claim by the petitioners under their proofs of debt. This suggestion is at the most but a mere possibility of some loss to the estate, without sufficient probability to entitle it to consideration. No actual offer is stated to have been made; and, as the assertion of a superior claim by Brown, Shipley & Co. had been interposed in that suit, it is hardly credible that any final settlement by Dennistown, Wood & Co., or any payment of money by them, would have been made that did not involve the surrender of the claim of Brown, Shipley & Co.; and there is no reason to suppose that such a surrender would have been made. The negotiation would, therefore, have amounted to nothing.

The proof of debt in this case has never been used as a means for taking part in any meetings of creditors, nor of influencing any of the proceedings in bankruptcy; nor since the discovery of the error in the proofs, but a few months since, has there been any such laches as should preclude amendment.

In being allowed to amend the proofs, however, by withdrawing the two bills in question, the petitioners will remove a valid defence which the trustee now has against their claim in a pending suit in England. Whatever the trustee's other grounds of defence may be, he had a right to rely upon this as, at all events, a valid one; and he has duly interposed it by answer in that suit. It was his duty

also to present such objections as were available in opposition to the present petition.

The amendments are, therefore, allowed only upon the terms of restoring the dividends on the two bills in question heretofore received, with interest thereon, and the payment of $50 counsel fees and charges of the trustee upon this application, and also upon payment of the costs and counsel fees of the trustee in the suit of Brown, Shipley & Co., commenced in July, 1881, up to this time, in case the trustee shall elect to abandon the further defence of that action; and, if he shall not so elect, then upon a stipulation of Brown, Shipley & Co. that in case of their success in said suit they shall have no costs therein up to this time, but shall pay the trustee's costs up to this date.